THE BANK OF THE STATE OF ALABAMA VS JAMES
M'DADE.

THE SAME VS CHARLES S. LUCAS.

THE SAME VS THOMAS J. FAISON.

*As to objection to the competency of a witness.*

*As to a purchase by a surety of trust property, convey-
ed for his benefit.*

*As to possession of property by a vendor.*

*As to instructions of an inferior Court upon matters
not set out in the record.*

*As to a* cestui que trust—*how far competent as a wit-
ness.*

*As to proof of one's declarations.*

1. It is not sufficient merely to *object* to the competency of a
witness, introduced on a trial in order to render his admis-
sion available in error—exception in such case should be
taken to the opinion of the Court overruling the objection.
2. Where a surety, after the execution of a deed of trust, ex-
ecuted for his benefit while surety,—discharges the liability
he has secured, to an amount equal to a price given for the
trust property, on a sale, made to him under the trust deed,—
such discharge of the security, is adequate consideration for
the purchase.
3. That property remains with a vendor for a period (not un-
reasonable,) after a sale—does not, *per se,* avoid the sale—the
possession appearing *bona fide.*
4. This Court can not consider instructions made by an inferior
Court, in relation to a deed, which is not set out in the re-
cord, nor its provisions stated.
5. One, who is a party provided for in a deed of trust, is not a

competent witness, to sustain the deed, and a sale made under it, by the trustee.

6. The *declarations* of one, who is a competent witness, can not be deposed to, by another witness.

In error to the Circuit Court of Montgomery.

In these cases, writs of *fieri facias*, were issued from the County Court of Tuskaloosa county, to the sheriff of Montgomery county, commanding the levy of a debt, recovered by the Bank of the State of Alabama, against William D. Bynum and Alexander McDade. These executions were accordingly levied upon certain property, consisting mostly of slaves, and which was claimed by Charles S. Lucas, Thomas J. Faison, James McDade, and William McDade. Upon these claims, issues were made up in the Circuit Court of Montgomery, which were all determined in favor of the claimants.

Upon the trial of the case against McDade, a deed of trust was produced, shewing a conveyance of the slaves levied upon, to Alexander Carter, and James McDade, and executed by Alexander McDade. The deed set out, a declaration of the embarrassed situation of the firm of Bynum & McDade, and recited that, in as much, as Jeremiah Cloud, William McDade, senior, James McDade, senior, and Thomas J. Faison, had become the sureties of the said firm of Bynum & McDade, and as said firm was indebted to H. and C, S. Lucas—therefore, the deed was made to secure them.

The bill of exceptions then set out, that "the said Lucas was offered as a witness on the part of the claimant; and was objected to, on the ground that he was directly interested, as he was

called to protect property secured, by the deed, to himself and others, and had a direct interest in doing so. The Court overruled the objection, and decided that it was an interest that went only to his credit: and the said Lucas, and others similarly situated, were allowed to testify.

"It was proved, that, after making said deed of trust, to wit, in September, eighteen hundred and thirty-three, a sale was had by the trustees: that at that sale, James McDade, the claimant, bid off the property in question; that he did not pay any money at the time of the sale; that the terms of the sale were cash, to be paid the day of the sale; that thirty-five negroes, of different ages, were sold; also, ploughs, wagons, mules, furniture, and other property, were sold; that no money was paid by any of the purchasers to the trustees; and that all the property was permitted to remain in the possession of the said Alexander McDade, the original owner, from the date of the deed to the —— day of November, eighteen hundred and thirty-four, when it was levied on. Witnesses deposed, that the purchasers left the negroes they purchased with said McDade, to enable him to gather his crop.

"The plaintiff's counsel requested the Court to charge the jury, that a mere liability to be damaged, as a security, would not, as against creditors, be held in law, a sufficient consideration to sustain an absolute sale.

"The Court charged the jury, that if the claimant had became security of said Bynum & McDade before the said deed, and if he has, since the sale paid such liabilities so secured, as to discharge the said Bynum & McDade; and in doing so; has paid a

fair price for said slaves, that it was a sufficient consideration to support the sale.

"The Court also instructed the jury, that if the negroes were left with the debtor, to aid in gathering his crop, it was authorised in law, and that the property remaining with the debtor, *bona fide*, under such an agreement, would not be, *per se*, fraudulent in law.

"A witness was introduced on the trial, and asked by the claimant's counsel, if he was not security for Bynum & McDade, on notes to the amount of three thousand dollars. The counsel for the plaintiff objected to the evidence, unless the note was produced, as it would be the best evidence. The Court overruled the objection, and decided that the witness might state the fact of, whether he was security on the notes, and to what amount; and the witness did answer said questions, and was also allowed to depose, that part of such debts were not due at the time of the sale: which statement was made, and assigned as a reason why cash payment was not exacted of this claimant—it not being then required to pay the liabilities he was on."

In the case of Lucas, the bill of exceptions stated, that, "on the trial of this cause, the plaintiff proved the levy of the execution, and that the property was in the possession, and under the control of Alexander McDade, one of the defendants in the execution. They also proved the value of the property.

"The plaintiff then offered Alexander Carter, as a witness, one of the trustees named in the deed of trust, under which the claimant claims title. The deed was made to said Carter and one James Mc-

Dade, to secure a debt due to H. & C. S. Lucas, and to secure said James McDade, and others, against loss, as the securities of Bynum & McDade—they having, as the deed recites, become liable, as the securities of said Bynum & McDade, to the amount of twelve thousand dollars. The property conveyed is thirty-five negroes, household furniture, wagons, &c.

" The plaintiff's counsel objected to said Carter as a witness, on the ground of interest, as the claimant claims title through him, and because he has an interest in sustaining his acts under the deed. The claimant, Charles Lucas, released said Carter from all liability to him; which was made of record. No other release was given or offered, either by the other persons concerned in the deed of trust, or by the creditors of Bynum & McDade, secured in the deed of trust, or by H. & C. S. Lucas, or by any person, except said Charles Lucas. The plaintiff still objected ; and said witness was examined, and deposed to the making of said deed of trust, and all the acts he had done under it. No evidence was given, that he had been discharged from the trust, or had completed his duties, as such trustee.

" Said claimant proved by the said witness, that a note, payable to George Poe, junior, or order, was in the possession of Lucas, and that he understood it to be, the note meant to be described in the deed of trust, as the debt to H. & C. S. Lucas, made by Bynum & McDade. This testimony was objected to ; there being no testimony to shew that they were the same, and the debt described in the deed purporting to be the debt of H. & C. S. Lucas. The Court over-

ruled the objection; and allowed the note and evi-dence to go to the jury. The said Carter was then ased by the claimant, if the said note had been de-posited with him by the said claimant, C. S. Lucas, He answered, it had. On being cross-examined, and asked, whether he had received it for the purpose of being executed, or given up to Bynum & McDade, he said, he could not say, that he was not authorised to give up or cancel it; and that if Bynum & Mc-Dade should apply for said note, he would not cancel or give it up to them.

" The other trustee was alsointroduced; and the same objections made, and overruled. He deposed, that he was one of the persons secured, or intended to be secured, in said deed: and that he had purchas-ed some of the property named in said deed; and that no settlement had yet been made of said trust. He was then objected to, on this ground, that he was called to sustain and increase a fund in which he is interested. These objections were overruled, and he was examined as a witness.

" It was proven, that no money was given at the time of the sale; that no note was taken; that no debt was cancelled; that the property was permit-ted to remain in the possession of the original debtor, from the date of the deed, to wit, second of May, eighteen hundred and thirty-three, to the —— day of November, eighteen hundred and thirty-three, when it was levied on; that up to that time, nothing had been done, except the putting the property up, and selling it.

" It was proven, that the claimant, Lucas, in Oc-tober, a month after the sale, went to McDade, the

4P 33

debtor, who was altogether insolvent, and took his promise in writing, for the hire of said negroes until the 25th of December ensuing, if they should remain so long in his possession; but took no security.

"It was also in proof, that the claimant had said he left the negroes, to gather the crop of the debtor.

"The property purchased by the claimant, amounted to upwards of twenty-eight hundred dollars. The note of Bynum & McDade, described in the deed of trust, is for twenty-three hundred and sixty-one dollars, or thereabouts, and interest.

"On this testimony, the plaintiffs' counsel requested the Court to charge the jury, that a mere liability, as securities of Bynum & McDade, would not be deemed a sufficient consideration to sustain an absolute sale, as against judgment creditors.

"The Court charged the jury, that if the persons intended to be secured in the deed, had become securities of Bynum & McDade, before the making of the deed; and the deed was made in good faith; and though the trustees afterwards sold the property under the deed, and declared the terms to be cash; and if the persons thus intended to be secured, and being such securities, purchased at such sale; and if the trustees did not require them to give their notes, or pay cash, because they were such securities; and if they have since, to wit, pending this suit, paid money, or secured the same, so as to discharge Bynum & McDade, and paid thereby, a fair equivalent,—it is such a consideration as will support the sale against all persons.

"It was objected by the plaintiff's counsel, that Charles S. Lucas, could not, without the consent of

his partner, Henry Lucas, apply the said debt to the payment of negroes purchased for himself individually.

" It was proved, that during the pendency of this suit, said Lucas had made his own note, balance being small, and left it with one of the trustees; but the witness deposed that he had not closed the matter—that they could not agree about the bill of sale.

" The Court overruled all said objections, and charged the jury, that if Bynum & McDade were indebted to H. & C. S. Lucas, at the time of making the deed ; and if C. S. Lucas purchased slaves at the sale, and has since deposited the note of Bynum & McDade with the trustee—intending that it should be given up or cancelled,—that it was sufficient; although not done until after the property was levied on—and although the trustee did not consider himself authorised to give it up or cancel it, had he been called on so to do, and that, notwithstanding the terms of the sale were cash, to be paid at the time; yet, if the said Charles S. Lucas has, since the pendency of this suit, deposited the note aforesaid, and his own note with the trusteee, for the balance of the purchase money,—such a consideration would support the sale.

" The Court charged the jury, that no one had a right to object to Charles Lucas applying the funds of the firm to his own use, except Henry Lucas ; and that in the absence of the testimony, his assent was to be presumed."

The following were the facts set forth in the bill of exceptions, in the case against Faison—

" That on the trial of this cause, at the present term, before the honorable John W. Paul, Judge, Charles Lucas, one of the members of the firm composed of H. & C. S. Lucas, whose debt is described in the annexed deed, was produced as a witness on the part of the claimant. The said witness being sworn, was asked, if he and the claimant, and the other persons named in the said deed of trust, had not entered into an agreement to prosecute this, and other claims, now pending in this Court, for the property named in said deed, and to bear jointly the expenses of feeing counsel, paying costs, &c; and if he did not feel a common interest in all said claims. To which the witness answered, that he, and the other claimants, have employed counsel to attend to all the cases, and gave their joint note for said fee, but that said note was not a conditional one, but was to be paid, whether they succeeded or not in their several claims ; and that he did not consider that he was, in any manner, concerned, or interested, in the result of this suit: that the terms of a sale of the property named in said deed had taken place, at which the witness, and the other persons named in said deed, including the claimant, had purchased in all the property named in said deed, and that although the terms of said sale were cash, current money, yet as the proceeds of said sale would belong to the several purchasers, including the witness, that they did not pay any cash, but that they had made an agreement among themselves, that, at some future day, they would divide the proceeds of said sale, or the proprerty so purchased, *pro rata*, among themselves, according to the amount of their several demands.

"The said witness also deposed, that the note held by H. & C. S. Lucas, had not been given up to Bynum & McDade, or to either of the members of said firm, and that said note had not been cancelled; but he also stated, that during the present term, he had left the deed at the house of Carter, one of the trustees, to hold until a full division and settlement, and that said Carter now has the said note. The witness also stated, that the amount of the property purchased by him, exceeded the amount of the debt due to H. & C. S. Lucas, and that he has not, as yet, paid the excess, or given any note, or obligation, for the payment thereof, but expected to pay the balance on the settlement. When asked, why the said settlement and division had not taken place, he answered, that the securities of Bynum & McDade, named in said deed, did not know the precise amount they were liable for, or would have to pay: that some of the demands were not due until February last, and yet remained due.

"Under this state of facts, the plaintiff's counsel moved the Court to exclude the witness, as being clearly incompetent; which motion the Court overruled, and permitted the witness to depose to the jury.

"The claimant's counsel asked the witness, what was the inducement alleged by Alexander McDade, for making said deed, and securing the persons therein named, and excluding others, who had been the securities of said firm. The plaintiff's counsel objected to the question, and requested the Court to instruct the witness not to speak of any statement, that Alexander McDade may have made at any

time, as it was in proof, that said Alexander Mc-
Dade is still in life, and residing in this county; and
that if overruled, in that request, then to confine
the statements and conversations of said McDade, to
the time of making the deed—it being in proof, that
the deed was máde at the house of A. Carter, on
the day it bears date. The Court overruled all these
objections, and permitted the witness to depose to
statements, made by the said Alexander McDade,
made at a different time, and on a different day, pre-
vious to the execution of the deed, to wit, that the
persons named in said deed, were persons that he,
the said McDade, had induced to become securities
of said firm, and that he never had induced any other
persons to do so; and that the property he was
about to convey was his individual property; and
that he wished it to go to the payment and indemni-
ty of those he had thus involved; to all which the
plaintiff objected, and was overruled, and the testi-
mony permitted to go to the jury."

It was contended, by *Peck*, in the case against
M'Dade—

First—The property was levied on, in the posses-
sion of the defendant in execution. This was suffi-
cient to subject it to the plaintiff's execution, unless
the claimant has shown a title in himself—*Hooper vs
Pair*, 3 Porter's Rep. 401.

Secondly—The claimant's right depends upon the
effect of the paper called a deed of trust, in the bill
of exceptions. I insist this deed vested no title
whatever, in the trustees; that it merely gave them
a power to sell, and until that power was executed,

the title remained in the defendant in execution; and the property was, therefore, liable to be seized, to satisfy the plaintiff's judgment. If a man, by his will, directs his executors to sell his land, this is but a bare authority, without interest, and the land, in the meantime, until the sale, descends to the heir at law. *Bergen vs Bennet*, 1 Cain's Cases, 15, 16—*Jackson vs Schauber*, 7 Cowen, 193—Powel on Devises, 193.

The operative words in this deed are not such as are used to convey an interest: "I do hereby *nominate, appoint* and *constitute.*" These words clothed the trustees with a mere agency, liable to be revoked at the will of the party; and if he had died before a sale, the power would have been gone, and the property would have went to his personal representatives.

Thirdly—If the Court, however, shall be of the opinion, that this deed operated to convey the property to the trustees, then, I insist, the Court below erred, in permitting Lucas, a party, secured by the deed, to be examined as a witness. He was clearly interested to sustain the deed; because upon it, his security depended. A party has such a direct and immediate interest in the event of a cause, as will disqualify him, when the necessary legal consequence of a verdict will be to *better his situation,* by either securing an advantage, or repelling a loss. 2 Stark. on Ev. 746—*Kennon vs M'Rea*, 2 Porter, 396.

In the case of Faison, *Peck*, also, of counsel, said—

First—The witness, Lucas, was incompetent, on the ground of interest.—2 Starkie Ev. 746, 747, and notes.

If this property is subjected to the payment of the plaintiff's execution, the fund provided by the deed for the payment of the debt, will be lessened: he is, therefore interested in supporting the deed, and the sale under the deed. A legatee, whose legacy has been paid, is incompetent as a witness for the executor, because if the estate is insufficient to pay the debts, his legacy is liable to be abated.—*Strong's ex'ors vs Finch*, Ala. Rep. 356.

Secondly — The declarations of Alexander M'-Dade ought not to have been received. Mr. Starkie says, " No declaration by a person can be given in evidence, where the party who made such declarations can be produced, and examined as a witness."—1st vol. Ev. 390—*Edmonstone vs Webb*, 3 Ess. N. P. Rep. 264—6 Eng. C. L. Rep. 129.

Alexander M'Dade was a competent witness, and if those declarations were proper and necessary, he should have been examined, instead of proving them by a third person.

COLLIER, J.—In these cases, a writ of *fieri fa⸗ cias* was issued from the County Court of Tuskaloosa, to the sheriff of Montgomery county, in favor of the plaintiff in error, against the goods and chattels, &c., of William D. Bynum and Alexander McDade, which was levied on some slaves in the possession of Alexander McDade ; to which the defendants respectively interposed their several claims, and tried the right in the Circuit Court of Montgomery, as our statute directs.

On the trial, the defendant McDade, gave in evidence, a deed, executed, the second day of May,

eighteen hundred and thirty-three, by which Alex-der McDade, acknowledged that Jeremiah Cloud, William McDade, senior, James McDade, senior, and Thomas J. Faison, had become the sureties of the said Bynum and himself, for the payment of a large sum of money, and that Bynum and himself were indebted to Henry and Charles S. Lucas, in a large sum of money, expressing, particularly, the extent of the suretyship of the said parties, as well as the debt owing to the Messrs. Lucas. And thereby *nominated, constituted and appointed* Alexander Carter, and the said James McDade, senior, with full power to sell the negroes in question, together with others, and other personal property, in such "manner and form as seem to them best, for the interest and benefit" of the parties intended to be provided for.

It was further proved, in the case against McDade, that a sale at auction was made in September, eighteen hundred and thirty-three, of the property designated in the deed, and remaining in the possession of Alexander McDade: it was levied on, in November following.

In each of the cases, we find a bill of exceptions, taken upon the trial. In the case against James McDade, it appears, that the plaintiff's counsel objected to the competency of a witness, introduced by the defendant ; that his objection was overruled, and the witness examined. To the charges and refusal to charge by the Court, the plaintiff's counsel except, and to nothing more. Had the plaintiff desired to take advantage on error, of the admission of the witness, he opinion of the Court should have been excepted to : the record showing nothing farther than

4P                34

that his competency being questioned, the objection was overruled by the Court. The plaintiff's counsel must be understood to have acquiesced in the decision. There was no intimation given of an intention to except. Had such intention been declared, the defendant might have discharged the witness, and thus have disembarrassed his defence ; but there being no such annunciation made, it would be unjust to the defendant, to give to the plaintiff an advantage here, of that which was not saved below.

In this case, the Court was requested to charge the jury, " that a mere liability to be damaged as a security, would not, as against creditors, be held in law, a sufficient consideration to sustain an absolute sale." Without giving a direct answer to this request, the Court charged the jury, that if the defendant had become the surety of Bynum & McDade, before the deed was executed, and has, since his purchase of the slaves in question, discharged their liabilities, for which he was a surety, and in doing so, has paid a fair equivalent for the slaves, his purchase is sustained by an adequate consideration : and further, if the negroes were left with Alexander McDade, to aid in gathering his crop, that a *bona fide* possession was not, under such circumstances, fraudulent, *per se.*

The bill of exceptions discloses no evidence to shew the pertinency of the instruction asked of the Court. In fact, the idea that there was such proof, is negatived by the deed, constituting Carter & McDade trustees to sell property in relief of the sureties, and to pay debts.

In regard to the first charge of the Court, it is

clear that there is no error. If the defendant was the surety of Bynum & McDade, at the time the deed was executed, and has since discharged the liabilities he had guaranteed, to an amount equal to the price of the slaves purchased by him, the consideration for his purchase was certainly adequate.— Without pretending to determine, whether, where there is an absolute sale of slaves, unaccompanied by possession, the transaction may be freed from the imputation of fraud, by shewing that they were left with the vendor, to enable him to gather a growing crop, we are of opinion, that the publicity of the sale, dispensed with the immediate delivery of possession, and operated as a notice to the world, of a change of property—*Kidd vs Rawlinson.** If, however, the slaves were suffered to remain without a change of possession, to effect some sinister end, as to defraud third persons, by giving to their possessor a false credit, the publicity of the sale would avail nothing. Or, if personal property is suffered to remain with the vendor, for an unreasonable length of time after a public sale, so as to warrant the inference that the transaction is merely colorable, the sale, though public, will not pass a title to the vendee, against the creditors of the vendor. Here the negroes were levied on within the same year, and but two months after the sale, and it was proved, that they remained with Alexander McDade to aid in gathering a crop, to the cultivation of which they had contributed. Under these circumstances, the Court might, with propriety, have instructed the jury, that if the possession was *bona fide*, such possession did not, *per se*, avoid the sale.

*2 Bos. & Pull. 59—. Starkie's Ev. 615, et post.

In the case against Lucas, the same objection may be made to the bill of exceptions, as in the case against McDade; though the Court, as we are informed, overruled several objections to the introduction of testimony, yet, only the charges given and refused by the Court, are excepted to. The charges given and refused in this case, only so far as variant from those shown by the bill of exceptions in the case against McDade, will be noticed.

The Court charged the jury, that if the persons intended to be secured in the deed, had become sureties of Bynum & McDade, before the deed was made, and *it* was made in good faith, though the trustees afterwards sold the property under the deed, declaring the terms to be cash, and if the persons intended to be secured, purchased at such sale, and the trustees did not require them, because they were the sureties provided for by the deed, to give their notes or pay the cash, and if they have, since the pendency of this suit, paid money, or secured it, so as to discharge Bynum & McDade, and the price paid, or secured, for the slaves, was a fair equivalent—the consideration was adequate to sustain the sale.

The Court further charged the jury, that if Bynum & McDade were indebted to H. & C. S. Lucas, at the time of making the deed, and if C. S. Lucas purchased slaves at the sale, and has since deposited the note of Bynum & McDade with the trustee, intending that it should be given up, or cancelled, that it was sufficient, although not done until after the property was levied on, and although the trustee did not consider himself authorised to give it up, or cancel it, had he been called on to do so, and that

notwithstanding the terms of the sale were cash, yet, if C. S. Lucas has, since the pendency of the present suit, deposited the note of H. & C. S. Lucas, against Bynum & McDade, and his own note, for the balance of the purchase money, with the trustee, the sale would be sustained by a sufficient consideration.

The Court further charged the jury, that no one but Henry Lucas, had a right to object to Charles S. Lucas applying the funds of H. & C. S. Lucas to his own use, and that in the absence of proof, his assent to such application was to be presumed.

The record in this case, does not furnish a copy of the deed alluded to, in the instructions of the Court to the jury, or inform us what were its provisions, so that we cannot say that the charge of the Court is erroneous. The deed may, (and we think, probably does,) invest the trustees with large discretionary powers, which made it proper for the judge thus to charge the jury. If such be the character of the deed, and the trustees have not transcended their powers, the question most likely to arise, in a controversy between the purchasers and a stranger to the deed, would be as to the honesty of their purchases. But it is needless to speculate upon a writing not now before us.

In respect to the right of C. S. Lucas, to make an individual application of the funds of H. and C. S. Lucas, we think it a question which the plaintiff in error could not raise. No matter how the slaves were paid for, if the purchase was, in other respects, free from legal objection, the title, as against all strangers, would be valid. Henry Lucas might perhaps complain, and, under some circumstances, might

hold Bynum and M'Dade still liable to him, or else charge C. S. Lucas, as a trustee, holding the slaves for the joint-benefit of H. and C. S. Lucas.

In the case against Faison, it appears, from the bill of exceptions, that C. S. Lucas, (one of the parties, provided for, by the deed, which is made part of the record in the case against M'Dade,) was introduced as a witness to sustain the deed, and a sale made under it, by the trustees. His competency was objected to, and the objection overruled. The same witness was examined, as to declarations of Alexder McDade, made some days before the deed was executed, against the consent of the plaintiff; to both which decisions the plaintiff excepted.

That the witness had a direct and immediate interest in the event of the cause, seems too clear to require argument. If the deed was upheld, the fund providing for the payment of his debt, and that of others, would remain undiminished; otherwise, it must be lessened, and if inadequate to meet all demands upon it, the witness must sustain a loss, pro, *2 Starkie, rata, with the other favored creditors.*
746.

The admission of the witness to depose, as to the declarations of Alexander McDade, was not permissible. Starkie lays it down, that no declaration, or entry, by any person, can be given in evidence, where the party who made such declaration, or entry, can be produced and examined as witness—Vol. 1, 390. †1 Stew.& See also Kennedy vs Meador.* That Alexander Mc-Porter,220 Dade was a competent witness, seems unquestionable. In point of interest, it was immaterial to him which party was successful; if the plaintiff failed in condemning the slaves, to the satisfaction of the

Bank's judgment, he was still liable to its payment; and if the plaintiff was successful, the defendants' demand was still open against him.   So, that in any view, there was an *equilibrium* of interest, which never disqualifies.   There can be no pretence, that the declarations of the witness were admissible, as a part of the *res gestae.*   They were made at a time and place, different from that at which the deed was executed,  and the execution of the deed being the only *thing done*, they cannot be referred to *it*.

Our conclusions, then, are, that the decisions of the Circuit Court, overruling the plaintiff's objections to the admission of evidence, in the cases against McDade and Lucas, can not be revised; because they are not excepted to,  but are merely recited in the bills of exception, as a part of the history of the causes; and that the judgment in these causes are consequently affirmed.

The exception being well taken, in the case against Faison, the judgment in that case is reversed, and the cause remanded.

GOLDTHWAITE, J. not sitting.