### CARTER and another *against* WATKINS.

Where the vendor of personal property is suffered to remain in possession of that property, after the sale, this is presumptive evidence of a fraudulent intent, and conclusively so, unless some good reason should appear to the satisfaction of the jury, repelling such presumption.

Where the vendor of a quantity of ox horns remained in possession after the sale ; and it was shewn, by the vendee, for the purpose of repelling the presumption of a fraudulent intent thence arising, that an adequate price was

paid for the property, and that it was left with the vendor to be manufactured into combs for the vendee; it was held, that these circumstances, though proper to be taken into consideration by the jury, on the question of a fraudulent intent, had not the legal effect of removing the presumption of such intent resulting from a want of change of possession; and furnished no explanation thereof, which the law would pronounce satisfactory.

*Fairfield,*
June, 1841.

Carter
*v.*
Watkins.

This was an action of trespass *de bonis asportatis ;* tried at *Danbury, September* term, 1840, before *Storrs,* J.

The property, for the taking of which this action was brought, consisted of a quantity of *Rio Grande* ox horns, and combs manufactured from them, some finished and others in an unfinished state.

The plaintiffs claimed this property by purchase from *Godfrey Shultze.* The defendant was a deputy sheriff, and had taken the articles as the property of *Shultze,* by virtue of several writs of attachment against him.

The facts regarding the sale to the plaintiffs, as claimed by them, were these. On the 7th of *April,* 1837, *Shultze,* residing in *Trumbull,* in this state, where he was doing business as a manufacturer of combs, sold to the plaintiffs 3000 ox horns, at 10 dollars *per* hundred, which was a fair price for them, and gave to the plaintiffs the following writing: " This is to certify, that I have sold to *L. C. Carter & Co.* 3000 *Rio Grande* ox horns, now in my shop at *Trumbull, Ct.* at 10 dollars *per* hundred, for which I have taken their note at 60 days in full; which horns are to be delivered to them, or order, on demand. *New-York, April* 7th, 1837. *Godfrey Shultze.*" The plaintiffs, at the same time, gave to *Shultze* their promissory note of that date, for 300 dollars, payable to him, or order, at the *Mechanics Bank,* in 60 days; which note, having been endorsed, by *Shultze,* to one of his workmen, was paid, by the plaintiffs, to the holder, at maturity. At the time of the purchase, the plaintiffs made one *Clemmens,* of *Trumbull,* their agent, to take possession of the horns for them, and then re-deliver them to *Shultze,* to be manufactured into combs for the plaintiffs. The instructions to *Clemmens* were given in writing, as follows: " Sir, we have bought 3000 *Rio Grande* ox horns, of Mr. *G. Shultze,* which we should like you to take formal possession of, in our name, leaving the same with him, to be worked into combs for us. By so doing, you will confer a favour on *L. C. Carter & Co.*" In pursuance of these in-

*Fairfield,*
*June, 1841.*

Carter
*v.*
Watkins.

structions, *Clemmens* took possession of the horns, at *Shultze's* shop, in behalf of the plaintiffs ; and then re-delivered them to *Shultze,* for the purpose of being manufactured into combs by him, for the plaintiffs, for a reasonable reward. The articles mentioned in the declaration were either a part of the horns so sold, or combs, finished and unfinished, made therefrom, for the plaintiffs, by *Shultze,* after such sale, and under said agreement. The property was attached, by the defendant, at *Trumbull,* on the 28th of *July,* 1837.

Upon these facts, the defendant claimed, that the sale to the plaintiffs was constructively fraudulent and void. He also claimed, and offered evidence to prove, that the sale was actually fraudulent, and made for the purpose of defrauding the creditors of *Shultze,* and consequently, was void. In support of the latter claim, the defendant offered evidence to prove, that at the time of the sale, *Shultze* had numerous creditors, and was insolvent ; that the plaintiffs were dealers in *New-York ;* that their business was to buy manufactured articles and sell them to customers in the country ; that they never saw the horns in question ; that *Clemmens* was an entire stranger to them, and his character, circumstances and business, were unknown to them, when they constituted him their agent to take possession of the horns ; that he was brother-in-law of *Shultze ;* that there never was a formal delivery of the horns to him, and he never took an account of them ; that *Shultze,* after the sale, sold to others the combs manufactured by him from said horns, and that with the knowledge of the plaintiffs ; that *Shultze* received the avails of said horns and of the combs manufactured from them, and never accounted, and never was called to account, for them to the plaintiffs ; that the note given by the plaintiffs for the horns, had never been paid by them ; that the purchase was made by the plaintiffs, merely on the representations, and at the request, of *Shultze,* and without any examination of them ; that when so sold, they were fairly worth more than the price agreed upon for them ; that no compensation to *Shultze* for manufacturing them, was agreed on between him and the plaintiffs.

The plaintiffs claimed, that the sale was shown by them to have been fair and honest ; that they had fully explained the transaction, and shown satisfactory reasons why *Shultze* was permitted to retain possession of the horns ; and prayed

the court to charge the jury, that if they should find the facts as claimed by them, they constituted a satisfactory explanation of *Shultze's* retaining possession ; and that in the absence of actual fraud, the sale was valid.

The court charged the jury, that if the sale was made for the purpose of defrauding the creditors of *Shultze*, it was fraudulent and void, and the defendant was justified in attaching the property, and the plaintiff could not recover : That the circumstance that *Shultze*, after the sale, was permitted, by the plaintiffs, to retain possession of the property, was *prima facie* evidence that the sale was fraudulent, and conclusively so, unless some good reason repelling the presumption of fraud, should appear to the satisfaction of the jury : That if the possession was, in the estimation of the jury, satisfactorily explained, and they believed that the sale was honest, and not made for the purpose of defrauding the creditors of *Shultze*, it was a valid transaction, and the plaintiffs were entitled to recover ; but if they should find, that it was not honest, but made for the purpose of defrauding the creditors of *Shultze,* then the verdict should be in favour of the defendant.

The jury returned a verdict for the defendant ; and the plaintiffs moved for a new trial for a misdirection.

*Hawley* and *Booth*, in support of the motion.

*Dutton*, contra.
*Bissell,* on the same side, declined argument.

STORRS, J. This case was submitted to the jury on the question of fact, for them to find from the evidence, whether the sale to the plaintiffs of the property in dispute, was honest, and not for the purpose of defrauding the creditors of the vendor ; accompanied with the instruction that the admitted fact, that the vendor was suffered to remain in possession of the property after the sale, was presumptive evidence of a fraudulent intent, and conclusively so, unless some good reason should appear to the satisfaction of the jury repelling such presumption. The plaintiffs, conceding the correctness of this general principle, claim that the court should have gone further, and charged the jury, that the facts which they claimed to have proved, repelled in law the presumption of fraud

*Fairfield,*
June, 1841.

Carter
*v.*
Watkins.

arising from the continuance of possession by the vendor. Those facts were, in substance, that an adequate price was paid, by the plaintiffs, for the property, and that it was left by them with the vendor, for the purpose of being manufactured into combs. These circumstances were undoubtedly proper to be taken into consideration by the jury, in forming their opinion as to the intent with which the sale was made ; and for that purpose are presumed to have had the weight to which they were properly entitled. But that they would have the legal effect of removing the presumption of a fraudulent intent, raised by the continuance of the possession of the property in the hands of the vendor, after the sale ; or that they furnished an explanation which the law would pronounce satisfactory, of such continuance of possession ; cannot be maintained. There are, indeed, many cases where, after a sale of personal property, possession of it may be retained by the vendor, and the situation and circumstances of it are such as to repel any presumption of fraud growing out of such retention of possession, or rather to prevent such presumption from arising : as, for instance, the case of a sale of a ship or goods at sea, where it is impossible that there should be an immediate change of possession. In such cases as these, it would be the duty of the court to inform the jury, that no presumption of fraud arises from a want of change of possession. But the case now before us is not of that character ; and there was nothing to call for a charge from the court below as to any circumstances which repelled the ordinary presumption of fraud arising from the continued possession of the vendor.

A new trial, therefore, should not be advised.

In this opinion the other Judges concurred.

New trial not to be granted.