# SIMERSON v. THE BRANCH BANK AT DECATUR.

1. A purchase made under a decree in chancery, foreclosing a mortgage, is *prima facie* valid, against a subsequent judgment creditor of the same debtor. But if the debt of the subsequent judgment creditor, existed at the time of the rendition of the decree in chancery, under which he claimed, the *onus* is cast on him of showing, that the decree was rendered for a debt due from the debtor to the complainant, he being also the purchaser.

2. The retention of possession by the mortgagor of personal property, after the law day has passed, is not necessarily a badge of fraud. If the property be suffered to remain with the mortgagor, by the mortgagee, a considerable time, it is a circumstance from which fraud may be inferred, if not satisfactorily explained. If he proceeds with reasonable diligence to foreclose his mortgage, no presumption whatever of fraud arises from the fact, that whilst the proceedings are in progress, the property is suffered to remain with the mortgagor.

3. Where there has been a public sale of personal property, the purchaser may leave it with the former owner, upon a contract, or from motives of benevolence, and if the act is *bona fide*, it will not be liable to the debts of the former owner.

Error to the Circuit Court of Mobile.

TRIAL of right of property, in which the plaintiff in error was claimant. The bank obtained judgment at the September term, 1845, of Mobile circuit court, against G. Lyon and James W. Roper, upon which a *fi. fa.* issued, which was levied upon two slaves, Patrick and Miles, as the property of Roper, and a *venditioni exponas* issued on the 30th October, 1846, directing the sheriff to sell the slaves, when the plaintiff in error interposed his claim.

The plaintiff, to establish his case, gave evidence conducing to prove, that the slaves levied on were in possession of Roper at the time of the levy, and had been for many years previous.

The claimant then produced a copy of the record, and proceedings of a suit in chancery, between himself and Roper, commenced in March, 1843, for the foreclosure of a mortgage

made by Roper, to indemnify him as a surety. The bill set forth the mortgage, that the claimant had paid the notes specified therein, and praying a foreclosure and sale. The answer of the defendant Roper, confessing the allegations of the bill—the evidence of the debt due the complainant—the master's report, and decree of sale—the sale in March, 1844, pursuant to the decree, and a purchase of the slaves by the complainants; a deed from the master, and confirmation by the chancellor.

He also produced the mortgage executed by Roper, the 20th September, 1841, made to secure the claimant, and J. B. Hogan, as his sureties for the payment of certain debts, which are thus described in the mortgage : Note for $4898, due June 3, 1842; one for $1141 82, due 4th May, 1842; one for $2167, due 9th December, 1841, and a note for $2700, due 28th November, 1841. Upon these notes the deed recites, that the claimant and Hogan were sureties.

The claimant also read in evidence, a power of attorney, made in January, 1844, constituting Roper his general agent in Mobile, and proved that he resided about forty miles from Mobile, and that the slaves levied on, worked with others at a brick yard, included in the mortgage, and sold under the same decree, and at a very short distance from Mobile, and that for a short time, during the summer of 1844, a person was employed by the claimant, to superintend the slaves at the brick yard.

It was proved that one of the slaves levied on, had been for a short time after the sale in the employ of the claimant to build a chimney for him. There was no evidence that the claimant had exercised any control over the slaves, or that they ever were in his possession, until after the sale by the master in chancery; or that they ever were withdrawn from his control, before the sale ; but the proof conduced to show, that they remained in his possession. There was no evidence that the slaves had been in the possession of the claimant, after the master's sale, except the slave previously referred to.

There was no evidence of the *bona fide* character of the debts mentioned in the mortgage, except the recitals in it, the proceedings in the court of chancery, and the evidence

of debt there filed.  It was proved, that the brick yard was very near the residence of Roper, that he had managed it for several years, controlling the yard, and delivering the brick, to those who purchased them; the claimant being seldom at the yard.  Roper had been insolvent for many years.

The court charged the jury, that in cases of absolute sales of personal property, where the possession remained in the vendor unexplained, and he continued to control the property, the law presumed fraud; and that the law was the same in the case of a mortgage of personal property, after forfeiture of the mortgage; that if after the forfeiture, the mortgagor remained in possession of the property, controlling and using it, the law presumed fraud until such possession was explained; and if not explained, and he was in failing and insolvent circumstances, such possession was conclusive evidence of fraud.

That if the possession of the mortgagor from the time of the forfeiture of the mortgage, to the time of foreclosure, had been accounted for, it was not necessary to account for the possession after the foreclosure, and sale, if the sale was public, and the proceedings in chancery and the sale *bona fide*.

At the request of plaintiff's counsel, the court further charged the jury, that in order to make the mortgage available, against the plaintiff, it was necessary the jury should be satisfied, it was executed for a good consideration; that the recitals of the deed itself, coupled with the production of the promissory notes therein mentioned, was not sufficient evidence of a consideration, but that the claimant should show by other evidence, that the responsibility incurred by him, for defendant, was actual and *bona fide*.

The court also charged, that if the claimant purchased the slaves, at a fair sale by the master, for a valuable consideration, the fact that they remained in the possession of the defendant in execution, after the sale, was no evidence of fraud. But although there might have been such a sale, yet if it was shown that the defendant in execution, *prior* to the sale, and between the forfeiture of the mortgage and the sale, had remained in undisturbed possession of the property, it was presumptive evidence of fraud, the law casting the *onus* upon the complainant, of repelling the presumption, and showing

that it was fair, and *bona fide;* and if this was not done, the presumption was conclusive.

These matters were excepted to, and are now assigned as error.

CAMPBELL, for plaintiff in error.   1. The plaintiff in error contends, that holding, as he does, a conveyance of the slaves claimed under a decree of sale, *rendered by the court of chancery—of a date prior to the levy—and of any evidence of debt against the defendadt in execution, submitted to the jury—* teat he was not required to support the decree by evidence of the *bona fides* of the transaction on which it was founded. That this proposition is true, although the suit in chancery was between the claimant and defendant in execution.— [Goodgame v. Cole & Co., at this term ; 5 Pick. 388 ; 4 ib. 460 ; 1 Stark. Ev. 241-2.]

2. That the retention of the slaves by the mortgagor, after the law-day had passed, though unexplained—and though no proof of the consideration of the mortgage was given, except the acknowledgments of the mortgagor, aud the production of the evidences of debt specified in it, was not conclu- sive evidence of fraud iu the sale of the master, and did not vitiate his conveyance—all these transactions taking place before the levy, or the *contract between* the plaintiff in exe- cution and the defendant.   [Bartlett v. Williams, 1 Pick. 288 ; Sydner v. Gee, 4 Leigh's R. 535 ; 2 Mason, 252.]

3. That a public sale of slaves by the master in chancery, *for a fair and valuable consideration,* is not vitioted by the fact, that prior to the sale, and between the sale and the law- day of the mortgage on which the decree of sale was founded, possession remained with the mortgagor.   [4 N. H. 469 ; 3 Met. 332.]

4. That an execution creditor, whose execution came to the hands of the sheriff two years and more after such a sale, and is founded upon a judgment eighteen months after, and who gives no proof of his debt, cannot avail himself of the fact that possession remained with the mortgagor between the law-day and the sale—*it being conceded, as it is, in the in- struction given,* that the sale by the master was for a fair and

valuable consideration, and public and *bona fide*. [Good-game v. Cole & Co., above cited.]

5. That the court was not authorized to reject the evidence of the notes described in the mortgage *as produced* by the claimant, and the admissions by the defendant in execution that the liability of the claimant was for his accommodation, it appearing that the admissions were made long anterior to the debt of the plaintiff. The production of the notes by the claimant, was *prima facie* evidence that he had paid them. On some of these notes he was an indorser.

6. A suit for a foreclosure of a mortgage, brought to the first court after the forfeiture, and prosecuted to a decree and sale, with all possible expedition, repels the presumption of fraud that arises from the possession of the mortgagor after the law day. These facts being apparent from the record, the charge of the court was erroneous on that point. [7 Dana, 225.]

7. That no *legal* presumption of fraud arises from the possession of the mortgagor, after a suit has been commenced for a foreclosure of the mortgage, unless the jury should find the suit to have been collusively conducted. The court has no right to assume *that* as a fact in the case, and to require extrinsic evidence of fairness.

8. The effect of the decree and sale, was to establish a debt, a condemnation of the property of the debtor, and its transfer to the claimant. The plaintiff in execution shows no better evidence of *his* claim. To condemn property held under such proceedings, the burden rests upon the plaintiff in execution to establish fraud in the decree and the sale, and the claimant is not required to establish its integrity. The fact that the defendant to the decree was in possession at the date of the sale and prior to its execution, is not conclusive evidence of fraud in the absence of such proof. [Wadsworth v. Havens, 3 Wend. 411.]

9. Possession of property by the defendant in execution since the sale, is not evidence of fraud, the sale being public and notorious. [Watkins v. Birch, 4 Taunt. 823; Joseph v. Ingraham, 8 Id. 338; Latimer v. Batson, 4 B. & C. 652; Leonard v. Baker, 1 M. & S. 251; Laughlin v. Ferguson, 6 Dana, 118, and cases cited; 4 Porter, 252.]

LESESNE, for defendant in error.

1. The charges of the court to the jury, under the facts in evidence, are correct as to the effect of possession. [Hobbs v. Bibb, 2 Stew. R. 54; Ayres v. Moore, Ib. 336; P. & M. Bank v. Borland, 5 A. R. 531; Borland v. Mayo, 8 Ib. 104; Edwards v. Harbin, 1 D. & E.]

2. Retention of possession after mortgage forfeited, is the same in its effect to create the presumption of fraud, as after an absolute sale. [Edwards v. Harbin, above cited; 1 Smith's Leading Cases, p. 1; Wiswall v. Ticknor & Day, 6 A. R. 178.]

3. The temporary employment of Coxe to superintend the property, had no purgatory effect upon the fraudulent possession. Nor the temporary employment of one of the slaves. [Edwards v. Harbin, above cited.] Joint possession even by the vendee with the vendor is merely colorable. [Wordell v. Smith, 1 Campb. 332.]

4. The court correctly charged the jury, that the consideration must be proven by extrinsic evidence. The transaction had been impeached by evidence creating a presumption of fraud, and even as against a subsequent creditor, it was necessary to remove the badges of fraud by proof of consideration. [2 Leigh R. 29; Goodgame v. Cole & Co. at the present term of this court.]

5. The fact that there had been a foreclosure and sale, did not dispense with the necessity of explanatory proof, or proof of consideration. These proceedings are not evidence against a stranger. [1 Stark. Ev. pt. 2, p. 369, Note 1, and case there cited.]

6. The evidence showed that Roper had been insolvent for many years; this imposed the necessity of showing the consideration. [2 Leigh R. 29, above cited; 5 A. R. 9; 5 Pick. 388.]

7. The *onus* of proving that the debt arose before the mortgage was made was on the claimant, first, because the proof had impeached it as fraudulent. [Cases last cited.] It is incumbent on the party relying upon a title thus impeached, to show the admissions on which he relies. In this case the title itself arose before the debt of the plaintiff in execution.

8. The statute of 1845 (pamphlet acts, p. 136) is conclusive against such evidence. The law is levelled at the statements, not the person of the mortgagor. To admit his statements, while he is in person incompetent to testify, would involve a plain absurdity in the administration of justice.

9. The case at bar is distinguishable from Goodgame v. Cole & Co. 1st. In the fact that the admission there was made before any sale took place to the claimant. 2d. In the fact that it is the fraudulent deed which in the case at bar is relied upon as proving its own consideration, in the face of the facts impeaching its *bona fide* character.

10. The cases cited by the plaintiff in error show that the mere fact of a judicial sale does not of itself divest a fraudulent possession of the character affixed to it by law. [Leonard v. Baker, 1 M. & S. 251; Latimer v. Batson, 4 B. & C. 652, and the case from 4 Taunton are examples.]

ORMOND, J.—The title of the claimants, is a purchase of the slaves in controversy, in March, 1844, upon a sale made upon a decree in chancery, rendered in his favor v. Roper. The title of the bank rests upon a levy made upon the same slaves, in November, 1846, upon an execution issued upon a judgment, obtained in September, 1845. It is evident from this statement, that as these parties derive their title from the same source, that of the claimant being prior in point of time, and of the same grade, with that of the plaintiff, is on its face the better title. Nor does this appear to have been directly controverted in the court below. The contest there, appears to have been, upon whom the burthen of proof was cast, to prove the consideration of the respective judgments.

The claimant, it appears, produced the mortgage, which was the foundation of the decree under which he claimed, and the notes recited in the mortgage, and insisted, they were *prima facie* evidence of the truth of the facts recited in them, as an admission of Roper, the common debtor of both the parties. The court required him to go further, and prove the fact, that the indebtedness actually existed, and had been discharged by the claimant, as surety, so as to entitle him to foreclose his mortgage.

In the actual posture of the case, this was error in the court below. It does not appear, that when the claimant obtained his decree against Roper, the debt upon which the bank afterwards obtained a judgment against Roper, existed; and assuming that the debt did not exist until afterwards, the decree was evidence, *prima facie*, that the facts upon which it was founded existed. If the bank had shown, that at that time it was a creditor of Roper, the *onus* would then have been shifted to the claimant, who would have been required to show, that his decree was founded upon a debt actually due to him from Roper. This is the principle to be extracted from the case of Goodgame v. Cole & Co., at the present term.

The case of Blow v. Maynard, 2 Leigh, 49, decides nothing adverse to the principle settled in that case. The question there was, as to the effect of a recital in a deed, by one indebted at the time, and by which he conveyed his property to a member of his family, and the court held, that where this deed was set up, against one who represented a party, who was a creditor long anterior to the making of the deed, that the recital in the deed, was not evidence of the consideration there expressed. The admissibility of such testimony, under such circumstances, is not countenanced by the case of Goodgame v. Cole & Co.

It was doubtless also competent for the bank to impeach the decree, under which the claimant deduced his title, for fraud between him and Roper. The principal fact relied on to prove the transaction between Roper, and the claimant collusive, was the retention by Roper of the slaves after the forfeiture of the mortgage; ane the exercise of ownership by him, over the property. Upon this point, the court in substance charged the jury, that the retention of possession by the mortgagor, after the law day had passed, was precisely equivalent in its effects, to the vendor remaining in possession, after an absolute sale of personal property. This charge cannot be supported. There is a plain, and obvious distinction between the two cases. The purpose of a mortgage, is the security of a debt, and not the sale of property. Although as a consequence of the mortgage, the property may be sold for the payment of the debt. But that is not the primary in-

tent of the parties, and the design being to secure the payment of a debt, and not to sell the property, there is not the same inconsistency in leaving it with the mortgagor, even after the forfeiture of the mortgage, as in the case of an absolute sale, purporting to transfer both the title and possession.    Doubtless the retention of the possession by the mortgagor, for any considerable portion of time, with the assent of the mortgagee, after the forfeiture of the mortgage, would be a circumstance from which fraud might be inferred, if not satisfactorily explained.    But where the mortgagee proceeds with reasonable diligence, to foreclose his mortgage, no presumption whatever of fraud arises from the fact, that whilst the proceedings are in progress, the property is suffered to remain with the mortgagor, as that is entirely consistent with the object of the mortgage—the security of the debt.    If proceedings are not commenced within a reasonable time to subject the property to the payment of the debt, it then devolves on the mortgagee to show, that his conduct is consistent with fair dealing.    The law was thus ruled in Willis v. The P. & M. Bank, 5 Ala. 781, where the general language employed by the court, in Magee v. Carpenter, 4 Id. 475, is restrained and limited.

The fact, that the mortgagor was suffered to retain the possession after the foreclosure of the mortgage, and sale under the decree, stands upon different principles.    The notoriety of a public sale, which by giving notice to the public, that the title has passed out of the former owner, and thereby prevents him from obtaining a delusive credit, from the apparent ownership of property, which belongs to another, creates a distinction, between public and private sales, where there is no change of possession, as to the rights of creditors. [Kidd v. Rawlinson, 2 B. & P. 59; Watkins v. Birch, 4 Taunton, 823; Joseph v. Ingraham, 8 Id. 338; Leonard v. Baker, 1 M. & S. 251; Latimer v. Batson, 4 B. & C. 652; Bank of Alabama v. McDade, 4 Porter, 266; Abney v. Kingsland, 10 Ala. 363.]

In Latimer v. Batson, *supra*, the law is thus summed up, by Mr. Justice Bayley, as the result of the adjudged cases: "That if goods seized under an execution, are *bona fide* sold, and the buyer suffers the debtor to continue in possession of

the goods, still they are protected against subsequent executions, if the circumstances under which he has the possession are known in the neighborhood. The jury in this case, were therefore properly directed to give their verdict for the plaintiff, or defendant, according as they should be of opinion, that the transaction was fair or fraudulent." This is clear, and intelligible, and is doubtless the law upon this subject. In the case then, of a public sale of goods, the purchaser may leave them with the former owner, upon a contract with him, or from mere kindness or benevolence, and if this conduct is *bona fide*, and is not intended to delay, hinder or defraud creditors, he will hold the property against the other creditors of the debtor.

In Kidd v. Rawlinson, *supra*, Lord Eldon lays stress upon the fact, that Kidd, the purchaser, was not a creditor. In Watkins v. Birch, *supra*, Gibbs, Justice, asserts, that this makes no difference, if the creditor takes a regular bill of sale from the sheriff. In our judgment, the only difference in such a case would be, that the creditor, being also a purchaser at execution sale, would be required to establish the justice of the debt, against one not a party, or privy to the judgment, under which he claimed title.

Reversed and remanded.