## MAULDIN & TERRELL v. MITCHELL.

1. A slave was seen going from the house of the defendant in execution, towards the new ground of the claimant, with an axe on his shoulder, and in reply to a question, answered, " he was going to some new ground to work." Held, that the declaration of the slave was incompetent to establish the fact, that he was in the employ of the claimant.

2. If, after an absolute sale of a slave, the possession remain with the vendor, the presumption of fraud, which the law makes, is not repelled, or explained, by proof, that the vendee is a man of fortune, and the vendor, his brother, poor, and with a family dependant upon him.

Error to the Circuit Court of Montgomery. Before the Hon. G. Goldthwaite.

TRIAL of right of property, in which the plaintiff in error was the plaintiff in execution.

From a bill of exceptions it appears, that the plaintiff levied on a slave by the name of Jesse, by virtue of an execution against Columbus W. Mitchell, and proved that the

slave was in his possession at the time of the levy, and that he and the claimant, John Mitchell, were brothers.

The claimant read to the jury a deed executed on 21st February, 1846, by Columbns W. Mitchell, by which he conveyed, in consideration of $1,000, the slave in controversy to William Mitchell, together with another slave, his household and kitchen furniture, corn, fodder, &c., and all his rights, title, &c., in his father's estate. This deed is without condition, and was proved, and recorded.

The claimant proved the payment of sundry sums of money for the defendant in execution, equal to, or greater than the consideration named in the deed; and it was also proved, that the claimant was rich, and the defendant was poor. Evidence was also offered of the exercise of ownership by Columbus Mitchell, after the conveyance, and various other facts were proved, tending to impeach the fairness of the transaction.

The claimant was also permitted to prove, against the objection of the plaintiff, that the slave Jesse, after the execution of the deed, was seen going with an axe on his shoulder, on land belonging to claimant, (from the direction of the house of Columbus,) towards a piece of new ground belonging to claimant, and that in reply to a question of the witness, the negro stated, he was going to some new ground to work. The plaintiff excepted.

The court charged, that the continued possession by the defendant in execution, after the sale of the negro to claimants, was inconsistent with the bill of sale, and that unless the fact of such possession remaining with the vendor was explained, they should find the property subject. That it was proven, the claimant and defendant in execution were brothers; the former rich, and the latter poor, and with a family. That the jury could regard these circumstances, as tending to prove, that the claimant in allowing the property to remain in possession of defendant in execution, after the sale, was influenced by motives of humanity and benevolence, and thus explain the fact of possession remaining in the vendor, and repel the presumption of fraud, which would attach

Mauldin & Terrell v. Mitchell.

to that circumstence, unexplained.  This was excepted to.
The matters of law arising out of the  bill of exceptions, are
now assigned as error.

J. W. Pryor, for plaintiff in error, contended,  that where
the possession remained with  the grantor, after an absolute
sale, it vitiated  the sale.   Twine's case, 3 Coke, 80 ;  Land
v. Jeffries, 5 Rand. 211 ;  Smith v. Henry, 1 Hill S. C. 16 ;
Anderson v. Fuller, 1 McM. Eq. 27 ;  Coburn v. Petterney, 3
N. H. 415 ;  Hamilton v. Russel, 1 Cranch, 309.

This court  has  decided, that the continued possession of
the grantor is *prima facie* evidence only of fraud ; that this
presumption may be repelled by competent testimony.  Facts
which refer exclusively to  the condition of the grantor, will
not repel the presumption of fraud, but in this case the court
instructed the jury, that humanity  and benevolence on  the
part of the grantor, were sufficient  to repel the inference of
fraud.   This is clearly erroneous.   Gardner *v. Adams*, 12
Wend. 297 ;  Doane v. Eddy, 16 Id. 523 ;  Cook v. Randall,
17 Id. 53 ;  Borland v. P. & M. Bank, 5 Ala. 531.

Belser & Harris, contra.

1.  The evidence, in regard to the declaration of the slave,
was permissible.   It was a declaration accompanying an act,
and was relevant testimony, under the issue.   It was a slight
circumstance, to be weighed by the jury, to show  the pos-
session  of the slave in claimant, at a certain time, after the
sale.   Grey *v. Young*, Harper's Rep. 38 ;  Brown v. Lester,
Georgia Rep. 79 ;  White v. Strother, 11 Ala. 724 ;  9 Ala.
313.

2.  There was no error, so far as  the charge of  the court
goes.   The evidence was admitted to explain the possession
after the sale, in the vendee.   The principle governing it is
settled by numerous authorities.   Prosser v. Henderson, 11
Ala. 488 ;  Anderson v. Hooks, Ib. 958 ;  Henderson v. Ma-
by, at this term ;  Morgan v. State, 11 Ala. 289.

COLLIER, C. J.—In Grey v. Young, 4 McC. Rep. 38, which was an action for the breach of warranty of the soundness of a slave, the declarations of the slave that he had a pain in the side, which declaration induced the discovery of his disease, were received against the defendant. The competency of this evidence was rested upon the ground that it was mere inducement, and admissible from necessity. But in another case, the declarations of a negro were judged inadmissible, because he was an incompetent witness; it was however held, that they might be received in connection with, and as the foundation of the opinion of a physician to whom the communication was made. Tumey v. Knox, 7 Monr. Rep. 88. The declarations of a sick negro to her physician, were held inadmissible in Georgia, except as to the disease of which she was afflicted at the time of the conversation. Brown v. Lester, Geo. Dec. part 1, 77.

The tacit recognition of relationship, the disposition of, or devolution of property, and many similar facts and circumstances, from which the opinion and belief of those who must be presumed to know the fact, may be inferred, is certainly entitled to much consideration. Greenl. Ev. § 105. Under the influence of this rule, it has been held, that it was allowable to prove that a negro child was in the habit of calling a negro woman mother, and that they were treated by the family to which they belonged as bearing such a relation to each other. White v. Strother et al. 11 Ala. Rep. 720.

Where a witness is *prima facie* incompetent, on the ground that he is a slave, his declarations are inadmissible as evidence to establish his *status*. Fox v. Lambson, 3 Hals. R. 275.

These citations are more nearly in point upon the question arising in the present case on the admissibility of the declaration of the slave levied on, than any we have seen; but they do not in our opinion sustain the decision of the circuit court. The cases in McCord's and Monroe's Reports, and Georgia Decisions are referable to the doctrine of *res gestae*

and the declarations are admissible as connected with, and explanatory of, the opinion expressed by the physician, as to the health of the slave, or the character of his disease; and the case in our own reports, depends upon a principle which fully supports it, but has no analogy to the present.

Negroes, whether bond or free, are incompetent to testify in a suit between white persons, and we know of no principle which would authorize the admission of their unsworn declarations to establish an independent fact. Here the witness saw the slave coming from the direction of the house of the defendant in execution, and going in the direction of a new ground of the claimant, with an axe on his shoulder, and in reply to a question by the witness, the slave answered, " he was going to some new ground to work." The particular fact to be shown was, that although the slave seemed to be coming from the defendant's house, he was in the claimant's employment, clearing his land; and this was the *res gestae*—the *subject matter*, or *thing done*. This simple statement is quite enough to show, that there was no *res gestae* to which the declaration can be referred as an element, or constituent part. It does not even appear that the slave performed labor at the place designated—the only evidence that he did, or intended to do so, is the answer of the slave himself, to the inquiry of the witness. This certainly cannot be admissible for that purpose, and the testimony, except as to the fact that the slave was seen with an axe on his shoulder going towards the claimant's new ground, from the direction of the defendant's house, was improperly admitted. See Brown v. Lusk, 4 Yerg. Rep. 210.

In Hobbs v. Bibb, 2 Stew. Rep. 54, it was decided that the possession of personal property remaining with the vendor, after an absolute sale, is presumptive evidence that the ownership is unchanged; this presumption may be rebutted by explanatory, or countervailing proof. This case was reaffirmed in Ayres v. Moore, Id. 336, and it was held, that the continuing possession of the vendor was not excused by proof that the sale was *bona fide* and an adequate considera-

tion paid. So also in the Planters and Merchants' Bank v. Borland, 5 Ala. Rep. 531, it is said, " some reasonable excuse, or satisfactory explanation at least, should be shown to rebut the legal presumption that the right of property is with the possession of a personal chattel." The retention of possession by the vendor is not sufficiently explained to repel the inference of fraud, by proof of a secret agreement between himself and the vendee, that the latter should continue to control the property as his overseer. Borland v. Walker, 7 Ala. Rep. 269. And in the latter case, the insolvency of the vendor, and the fact that his wife was the daughter of the vendee, it was supposed rather strengthened the inference of fraud, than excused the possession remaining with the vendor.

In the P. & M. Bank of Mobile, v. Willis & Co. 5 Ala. 770, this court said, the retention of possession of a chattel by the mortgagor, is entirely consistent with the nature of the security. But if the mortgagee retains the possession for an unreasonable length of time after the mortgage is forfeited, this may warrant the inference that the debt was paid, or that the mortgage was held up as a protection for his property against the demands of creditors. Yet in such case it cannot be assumed as a conclusion of law, that the mortgage is fraudulent. See also, Simerson v. The B. Bank at Decatur, 12 Ala. 205.

It seems that the rule which declares that an *absolute transfer* of personal chattels without the delivery of possession, is *prima facie* evidence of fraud, does not strictly apply to a public sale of goods under execution, or perhaps under deed of trust, where a person other than a creditor becomes the purchaser. Abney v. Kingsland & Co. 10 Ala. R. 355; Simerson v. The Br. Bank at Decatur, 12 Ala. Rep. 205.

Henderson v. Mabry, 13 Ala. Rep. 713, is not in conflict with Borland v. Walker, *supra*. True, the judge who delivered the opinion, went beyond what the facts seem to have required, and supposed the bad health of the vendor's wife, and her relation to the vendee, excused the transaction from the imputation of fraud, as an inference from the retention of

possession by the vendee. Thus far, the opinion must be regarded as a mere *dictum;* for it was explicitly shown by the record to have been a part of the contract of sale, that the slave in controversy should not be delivered to the vendee until the first of January next after the sale. At the expiration of that period, the slave was delivered to the vendee, and retained by him for more than four years, when she was levied on by an attachment issued against the estate of the vendor. The rule we are considering could not have been invoked for two reasons; *first,* the vendor's possession was consistent with the terms of his contract; *second,* the possession was changed years previous to the levy of the attachment, and for that length of time at least, the sale was effectual against every one who could not show a pre-existing lien. See Prosser v. Henderson, 11 Ala. Rep. 484.

The distinction between an *absolute sale* and a *mortgage of goods,* as to the effect of the vendor or mortgagor's possession, is abolished by statute in New York; and it has been there held that a mortgage of personal property is fraudulent as against the creditors of the mortgagor, where there is not an immediate delivery, followed by an actual and continued change of possession; although the mortgage is made in good faith, and without any intent to defraud, unless the continued possession in the mortgagor is satisfactorily explained. *Further,* it is not a satisfactory explanation of the mortgagor's possession, that he was a *traveling* or *missionary* preacher of the gospel, and that the use of the mortgaged property, which was a horse, was necessary to enable him to pursue his vocation. Upon this evidence the court decided against the mortgagee, without submitting to the jury the question of fraudulent intent. 16 Wend. R. 523.

It is confessedly, often a difficult question to determine when the inference from the continued possession is satisfactorily repelled. We are unable to educe from the books any general rule by which the facts of every case may be scanned, and their legal effect ascertained. Under such circumstances, the proper course is to adhere as near as may be to precedent, and the lights which are furnished by legal analogies—con-

fining the decision to the case before the court, without employing argument or *dicta* beyond it.

If our own decisions are to be followed, we think the possession of the defendant in execution has not been explained so as to remove the inference of fraud deducible from it, by merely showing that he was a brother of the claimant, with a family dependent on him, and that the claimant was a man of fortune. This merely proves the absence of *mala fides* in fact, and that the claimant was influenced by feelings of benevolence, but does not repel the inference which the law draws from the possession. If the intention of the vendee to perform an act of kindness towards the vendor would furnish a sufficient explanation for the retention of the slave, then the vendee need only show that the sale was *bona fide*, and the consideration either paid, or intended to be paid; and this much it might be necessary to prove, even where there had been a change of possession, against the creditors of the vendor. A desire to serve the vendor might be successfully invoked in every case, as it would be inferable from allowing the property to remain with him. It will not do to make a distinction where the vendor is a near relation; in such case the impulse would be stronger, but still the vendee might be influenced by benevolence towards a friend, or even a stranger. Besides, as the motive to serve a father or brother would be more potent, the temptation to practise fraud would be in a corresponding ratio. Independent of authority, this view seems to us to be consonant to law, and satisfactorily establishes the incorrectness of the charge of the circuit judge to the jury.

We will not go beyond what duty demands of us in this case, and inquire, or *even intimate* whether the facts recited in the bill of exceptions indicate, that although the bill of sale is absolute in its terms, it was intended as a security against the consequences of the vendee's suretyship for the vendor—if so, whether it would not be treated in equity as a mortgage, and at law the vendor's possession, in the absence of other evidence of fraud, be consistent with it. These

are questions which may perhaps be raised upon a future trial —they cannot form an element in the judgment we are now to pronounce. See Cutter v. Copeland, 6 Shep. Rep. 127; North v. Crowell, 11 N. Hamp. Rep. 251; Wheeler v. Train, 3 Pick. Rep. 255; Shurtleff v. Willard, 19 Pick. Rep. 202; Homes v. Crane, 2 Pick. Rep. 607; Carter v. Watkins, 14 Conn. Rep. 240; Fishburne v. Kurhardt, 2 Speers's Rep. 556; Butler v. Roll, Geo. Dec. Part 1, 37; Hall v. Tuttle, 8 Wend. Rep. 375; P. & M. Bank of Mobile v. Willis & Co. 5 Ala. Rep. 770. See also 2 U. S. Dig. 452 to 454, and 2 U. S. Dig. Sup. 46 to 51, where the principal cases upon the effect of the vendor's retaining possession are collected.

It remains but to add, that the judgment of the circuit court is reversed, and the cause remanded.