## ALVAH HALL vs. CHARLES GAYLOR.

The insolvent act (Gen. Stat., tit. 20, sec. 87,) provides that all conveyances made by any person in failing circumstances, with a view to insolvency, shall as against creditors be deemed fraudulent and void, unless made for the benefit of all the creditors. A manufacturing corporation was in fact insolvent, and in this condition sold a quantity of cloths manufactured and in process of manufacture to the plaintiff. At the time neither the plaintiff, nor the president of the corporation, who acted as its agent in the sale, supposed it to be insolvent. They knew it to be embarrassed and that an extension of credit must be obtained to prevent a failure; but they believed that the necessary accommodation could be obtained and the corporation enabled to go on. The principal object of the plaintiff was to furnish the corporation with means to pay a note then maturing on which he was endorser, and to assist the president, who was his brother, in his financial management of the corporation. The court below found that the conveyance was not made in view of insolvency, nor with intent to prefer the plaintiff as a creditor. It also found that it was made in good faith and in the regular course of business, unless the motives above stated had the effect in law to destroy the good faith of the transaction and make it a conveyance with an intent to prefer creditors within the meaning of the statute. Held—1. That it was not to be inferred, as matter of law, that the conveyance was made to prefer the plaintiff as a creditor. 2. That as it was found that the conveyance was not made in view of insolvency it could not be invalidated by the statute.

The cloths in process of manufacture were left by the plaintiff with the corporation to be finished, subject to a right to take them away at his pleasure. Held that no title to these cloths passed to the plaintiff as against creditors.

Several weeks after the sale the cloths in question were by order of the plaintiff placed on board a steamboat to be conveyed to the city of New York. Before the steamboat left, the president of the company, without authority from the plaintiff, ordered them to be carried back to the mill, and they were so returned, and immediately after were attached by creditors of the corporation, and were held under attachment until, soon after, the corporation went into insolvency. Held that the original sale was completed and made valid by the subsequent delivery on board the boat, and that the rights of the plaintiff could not be affected by the acts of the company in re-taking the goods.

TROVER, for a quantity of cloths; brought to the Superior Court in Fairfield County. The plaintiff claimed under a purchase from the Mill River Woolen Manufacturing Company, a corporation; the defendant had taken possession of and claimed the property as trustee in insolvency of the same company. The facts, which were found by a committee, are sufficiently stated in the opinion. The case was reserved upon the facts for the advice of this court.

*Child,* for the plaintiff.

*Curtis,* for the defendant.

FOSTER, J. Two questions, substantially, arise on the facts found:—

1. Was the sale of the property in question fraudulent and void, as being within the statutory prohibitions relating to insolvent debtors?

2. Was it fraudulent and void at common law, as against attaching creditors, for want of delivery of possession?

The statute (Revision of 1866, p. 422, § 87,) provides "that all conveyances and assignments of any lands, tenements, goods, chattels, or choses in action, made directly or indirectly by any person, persons, or corporation in failing circumstances, with a view to insolvency, shall, as against the creditors of the party making such conveyance or assignment, be deemed and adjudged fraudulent and utterly void, unless the same shall be made in writing for the benefit of all said creditors," &c., &c.

It appears from the finding, that at the time of this sale the vendors, a corporation, were insolvent and in failing circumstances. Neither the president of the corporation, who acted as the agent of the vendors in effecting the sale, nor the plaintiff, who was the purchaser, knew or believed the corporation to be insolvent. They knew it was embarrassed for want of ready money to meet coming liabilities, and that accommodation by way of extension of credit must be obtained to prevent a failure; but they believed that the neces-

sary accommodations could be obtained, and the corporation could thus be enabled to continue in business. As there was a large amount of manufactured goods belonging to the corporation for sale in the hands of commission merchants, this belief was not without a show of reason. It is expressly found that the sale was not made with a view to insolvency, nor with an intent to prefer the plaintiff as a creditor, each party to the sale believing in the ability of the corporation to pay, and that, ultimately, it would pay its debts in full. The principal motives which induced the plaintiff to make the purchase, were to furnish the corporation with the means to pay a note of theirs, which was then about to mature, on which he was indorser; and to assist his brother, who was the president and financial agent of the corporation. The avails of the purchase were agreed to be used, and were in fact used, in payment of the note referred to, and so the plaintiff was relieved from his liability on the same.

. The finding further is, that this conveyance was made in good faith, and in the regular course of business, unless the motives which induced the purchase as stated above, and the fact that the payment of the note operated to the advantage of the plaintiff over other creditors, by making any extension of credit in respect to that debt unnecessary, should, in law, have the effect to destroy the good faith of the transaction, and make the conveyance one with an intent to prefer creditors within the meaning of the statute.

We think this sale was not invalidated by the statute. True, the vendors were insolvent and in failing circumstances, but that is not enough; the sale must have been made with a view to insolvency, and that it was not is expressly found. Neither of the parties had insolvency in view; both believed the corporation able to pay, and that it would pay its debts in full. It is by no means rare that men deeply insolvent, hopelessly so in the judgment of everybody but themselves, are possessed with a delusion that they have ample means to pay their debts, and that all they lack is a short extension of time.

It was not, apparently, without reason that the belief was

entertained that this corporation, though embarrassed, might go on. However that may be, we must take the fact as it is found, that this sale was not made with a view to insolvency, and is not, therefore, affected by this section of the statute.

Nor, on the facts found, does the law destroy the good faith of the transaction, and pronounce the conveyance one with an intent to prefer creditors within the meaning of the statute, and therefore void. Among the cases which sustain this conveyance we refer to *Quinebaug Bank* v. *Brewster*, 30 Conn., 559; *Croswell* v. *Allis*, 25 Conn., 301; *Utley* v. *Smith*, 24 Conn., 290. The case of *Bloodgood* v. *Beecher*, 35 Conn., 469, goes beyond the exigencies of this case.

2. On the second question, we think that, as to that portion of the cloths which were left by the purchaser in the mill, under the circumstances described, no title passed by this sale as against subsequent attaching creditors. There was no such delivery to the vendee as the law requires, and no excuse which the law recognizes as sufficient for the retention of possession by the vendors.

This principle has been too often decided, in cases recent and remote, to be considered an open question. In the language of BUTLER, J., in giving the opinion of the court in *Norton* v. *Doolittle*, 32 Conn., 410, "The policy which dictates it, and the prevention at which it aims, require its rigid application to every case where there has not been an actual, visible, and continued change of possession." The reason assigned for the retention of the possession, that the cloths might be finished, though a proper one for consideration, cannot be pronounced legally sufficient. The case of *Carter* v. *Watkins*, 14 Conn., 240, was an action of trespass for a lot of ox-horns, purchased by the plaintiffs, and allowed to remain in the hands of the vendor to be manufactured into combs. The defendant, a deputy sheriff, took them on certain writs of attachment afterwards issued against the vendor. After verdict for the defendant, the plaintiffs moved for a new trial, and claimed that the jury should have been instructed that the facts proved, being in substance that they paid an adequate price, and that the horns were left to be

manufactured, repelled in law the presumption of fraud arising from the continuance of possession by the vendor. Judge STORRS, who gave the opinion of the court, after remarking that these circumstances were undoubtedly proper to be taken into consideration by the jury, says, (p. 244,) "But that they would have the legal effect of removing the presumption of a fraudulent intent, raised by the continuance of the possession of the property in the hands of the vendor after the sale, or that they furnished an explanation which the law would pronounce satisfactory of such continuance of possession, cannot be maintained."

These views, in the correctness of which we entirely concur, must be decisive of this point in the case.

The sale however was good as between the parties, and some weeks after, before any action had been taken by third persons, most of these goods were taken from the mill and placed on board a steamboat at Stamford, by order of the purchaser, to be conveyed to him at New York. The president of the corporation, without authority from the purchaser, ordered them back to the mill. Most of them were taken back, and were the next day attached by the creditors of the corporation, and were held by the officer till the corporation a few days after made an assignment in insolvency.

Now, although the original sale of the goods left in the mill was fraudulent and void in law as to attaching creditors, it was completed and made valid by the subsequent delivery on board the boat of all which were so delivered, prior to any attachment. The agent of the company ordered them back, and a portion came back, but that fact cannot affect the rights of the plaintiff. His title was complete and perfect by the delivery on board the boat; as between the parties it was so from the first, and no act of the vendors, or any officer of theirs, any more than that of a mere stranger and wrong-doer, could divest or prejudice that title. The plaintiff therefore has a right to recover for the value of the goods taken back to the mill from the boat, as they were on the 23d of May, 1867. Deducting the cost of finishing the goods, and deducting $313.50 which is found to be the value of the

goods which remained in the mill, and were never delivered so as to vest any title against attaching creditors, the sum of $1,731.84 is found to be the value of the goods belonging to the plaintiff at the time they came into the hands of the defendant.

We advise the Superior Court to render judgment for the plaintiff to recover this sum, $1,731.84, of the defendant, with interest from the 1st of February, 1868, to the date of the judgment. We fix on the 1st of February as the time of the conversion, as the defendant at that time received the fair value of the property on a sale made for cash.

In this opinion the other judges concurred.