GEORGE W. SHAW AND ANOTHER *vs.* JONATHAN H. SMITH, TRUSTEE IN INSOLVENCY.

Where one contracts with another for a chattel not in existence, but to be made for him, though he pays the whole price in advance or from time to time as the work progresses, he acquires no title in the chattel until it is finished and delivered to him, unless a contrary intent is expressed.

And where the parties agree that the title shall at once vest in the buyer, so that the sale is complete as between the parties, yet the retention of possession by the maker leaves the chattel open to attachment by the creditors of the latter.

Where the maker of certain chattels fraudulently represented to the buyer that they were substantially completed and ready for delivery, and the buyer,

trusting the representation, paid the balance of the contract price, and the maker soon after made an assignment in insolvency, it was held, in an action of replevin brought for the chattels against the trustee in insolvency, that this fact could not affect the case, inasmuch as there was still no delivery of the chattels and no title that was good against the creditors of the maker.

A trustee in insolvency represents creditors, and has all the rights in such a case that creditors could have acquired by attachment.

REPLEVIN for a quantity of tools; brought to the Superior Court in the county of New London. The following facts were found by the court:

The defendant is the trustee of the insolvent estate of Joseph Corbett, assigned to him on the 26th of December, 1876, by Corbett, for the benefit of his creditors, under the provisions of the insolvent laws of the state.

Prior to this, on the 9th of September, 1876, Corbett and the plaintiffs, Shaw & Menown, entered into a written contract by which Corbett was to manufacture for the plaintiffs one thousand heads for the Wardwell sewing machine, according to certain specifications annexed to the contract, for $9,500; some to be ready for delivery on or before November 1st, 1876, and two hundred and fifty by the last day of that month; and, after that time, twenty-five per day. He was also to replace any piece that might not work on account of defect in material or not being made to gauge. Corbett was also to finish special tools for making the machine heads, according to specifications annexed, for $5,000. The plaintiffs were to deposit in a bank in Norwich, in their own names but for the use of Corbett, $2,500 on the 1st day of October, 1876, and $2,500 on November 1st, 1876, to be drawn for Corbett on the 10th day of those months if work to that amount should then have been completed, or if not completed, in proportion to the work completed; and after the deposit was exhausted the plaintiffs were to pay Corbett, on the 10th of each succeeding month, for all the machines delivered in the preceding month. A writing entitled "Specifications," signed by the parties and annexed to the contract, contained the following provisions: "The said tools and gauges to be of sufficient number and of proper quality to be capable of making fifty machines per day. The said tools

and gauges to be held in trust by the party of the first part for said Shaw & Menown, to be used by them in the manufacture of sewing machines, and all to be delivered to the said parties of the second part in working order and complete, upon the finishing of the work hereinafter specified, within ten days after written demand by said parties of the second part therefor."

Immediately after the execution of the contract, Corbett commenced to make and finish for the plaintiffs a set of special tools for the manufacture of the Wardwell sewing machine, and continued the work until the time of his assignment, when the work upon the tools ceased. These tools are the ones described in the plaintiffs' declaration.

At the time of Corbett's assignment a part only of the set of special tools was completed, a part was in process of manufacture, another part was in the rough, while towards the manufacture of still another part nothing had been done further than purchasing the material.

After the assignment the plaintiffs requested the defendant, as trustee, to complete the set of tools according to the terms of the contract, but he refused to do so.

The set of special tools, when completed, would be valuable for use in manufacturing the Wardwell sewing machine, but would be of little value for any other purpose; a small portion only could be used as general tools on other work.

The plaintiffs paid Corbett the full contract price for the set of special tools at the times and in the manner stipulated in the contract, except as the same was expressly waived by Corbett. They paid him on account of these tools, on the 9th of September, 1876, $2,500; on the 21st of October, 1876, $2,000; and on the 21st of November, 1876, $500. Corbett acknowledged the receipt of these several sums in writing, and in his receipt for the $500 expressed the same to be "in full for balance due on set of special tools as per contract of September 9th, 1876."

In the month of October, 1876, Corbett represented to the plaintiffs that the set of special tools would be completed during the following month, and when the $500 was paid he

represented that they were then substantially completed; which representation was believed by the plaintiffs to be true. But the set of special tools was not at that time substantially completed, which was well known to Corbett, and the plaintiffs were deceived by his false representation and were thereby induced to pay the $500.

No part of the set of special tools was ever delivered to the plaintiffs by Corbett, nor by the defendant as trustee, nor has Corbett, or the defendant as trustee, at any time recognized any right in the plaintiffs to the possession of them.

The entire assets of Corbett's assigned estate in the hands of the defendant, as trustee, are not more than sufficient to pay the preferred claims of his workmen.

The plaintiffs made demand, in writing, for the possession of the tools, upon the defendant, as trustee, on the 4th day of January, 1877, and after the defendant had duly qualified as trustee; but the defendant refused to deliver the tools to the plaintiffs.

Upon these facts the case was reserved for the advice of this court.

*S. Lucas*, for the plaintiffs.

1. On the finding of facts it appears that a fraud was practised upon the plaintiffs by the assignor, Corbett, whereby he obtained their money by means of representations which he knew at the time to be false. Having willfully and falsely represented to them, on the 21st of November, 1876, that the special tools were substantially completed, and the plaintiffs having acted upon those representations as true and paid him their money, he became thereby estopped from denying the truth of the representations, and the same estoppel affects the defendant as his trustee, who only succeeds to his rights, and should not be allowed to hold the fruits of his fraud.

2. The defendant received the property replevied subject to all the equities existing at the time of the assignment. The property not being held by attachment at that time, the defendant stands in the relation of a volunteer, and not as a

purchaser for value. Otherwise Corbett, by his voluntary assignment to the defendant, would be enabled to practice a double fraud upon the plaintiffs. *Palmer* v. *Thayer*, 28 Conn., 245; *Kelly* v. *Scott*, 49 N. York, 595; *Woodin* v. *Frazee*, 38 N. Y. Superior Ct., 190; *Ex parte Rockford, &c., R. R. Co.*, 1 Lowell, 345; *Winslow* v. *Story*, 2 Story, 630; *Matter of Howe*, 1 Paige, 125; *Goss* v. *Coffin*, 66 Maine, 432; *Dugan* v. *Nichols*, 125 Mass., 43; *Kenney* v. *Ingalls*, 126 id., 489; *Cook* v. *Tullis*, 18 Wall., 341; Bump on Bankruptcy (9th ed.), 494.

3. By the terms of the contract Corbett was to remain in possession of the property, and to hold it as trustee, so that actual possession by the plaintiffs was not contemplated by either party; and no delivery was necessary as between themselves to pass the title and vest it in the plaintiffs; and the plaintiffs had a right to suppose that the special tools were not only completed, but were being used for their benefit by Corbett in accordance with the terms of the contract. *Meade* v. *Smith*, 16 Conn., 360; *Hall* v. *Gaylor*, 37 id., 554; *Thompson* v. *Conover*, 32 N. Jersey Law, 466.

4. The case then stands, so far as the defendant is concerned, just as though the tools had been completed by Corbett, were in actual use by him under the contract, and were held by him in trust for the plaintiffs. The defendant being unable to complete the contract, a proper demand having been made in writing for the property, judgment should be rendered in favor of the plaintiffs to recover the property replevied, with damage for the retention and their costs.

*G. C. Ripley* and *J. Halsey*, for the defendant.

PARK, C. J. One Corbett agreed with the plaintiffs to make for them a complete set of special tools adapted to the manufacture of the Wardwell sewing machine, for a specified sum, to be paid as the work progressed. When Corbett had completed a part of the set of tools, and another part was partially completed, and still another part was in the rough, he became insolvent and made an assignment of all his property to the defendant for the benefit of his creditors.

At the time of the assignment the plaintiffs had paid him the entire contract price for the tools, although none of them had been delivered to them. The last payment of $500 was procured from them by fraudulent representations made by Corbett that the set of tools was substantially completed.

These are the principal facts, and the question is, do they make out a case for the plaintiffs ?

We think it is clear that the title to none of the tools ever became vested in the plaintiffs. None of them had been delivered, accepted, or inspected by them. The tools were required by the contract to be of a certain quality, and capable of manufacturing fifty sewing machines per day. If they should not answer the contract the plaintiffs were not bound to receive them. Hence they required inspection and acceptance under the contract before title to them would pass to the plaintiffs. Indeed the plaintiffs had the right to insist that the entire set of tools should be put to the test in order to ascertain whether they were capable of manufacturing fifty sewing machines per day, before they were bound to accept any of them. The set of tools was an entirety. When completed, each tool would perform its particular function, like the different wheels and movements of a complicated machine. There is nothing in the case which tends to show that up to the time of the assignment the plaintiffs did not insist upon all their rights under the contract. Indeed it is to be presumed that they did until the contrary appears; the finding in this case therefore shows no title in the plaintiffs to any of the tools, even as between themselves and Corbett.

This is clearly the proper view of the case on principle, and it is supported by the decided cases on the subject. What the court said in the case of *Clarke et al.* v. *Spence et al.*, 4 Adol. & El., 448, is applicable here : " On the part of the plaintiffs it was not denied in argument, nor could be according to decided cases and known principles of law, that in general under a contract for the building a vessel or making any other thing not existing in specie at the time of the contract, no property vests in the party, whom for distinc-

tion we will call the purchaser, during the progress of the work, nor until the vessel or other thing is finished and delivered, or at least ready for delivery, and approved by the purchaser; and that, even where the contract contains a specification of the dimensions and other particulars of the vessel or thing, and fixes the precise mode and time of payment by months and days. The builder or maker is not bound to deliver to the purchaser the identical vessel or thing which is in progress, but may if he pleases dispose of that to some other person and deliver to the purchaser another vessel or thing, provided it answers to the specifications contained in the contract."

Judge SWIFT, in his Digest (1 Swift Dig., 379), says: "If a person contracts with another for a chattel not in existence, but to be made for him, though he pays him the whole value in advance, and the other proceeds to execute the order, the buyer acquires no property in the chattel till it is finished and delivered to him."

In the case of *Williams et al.* v. *Jackman et al.*, 16 Gray, 514, Bigelow, C. J., says: "Under a contract for supplying labor and materials and making a chattel, no property passes to the vendee till the chattel is completed and delivered or ready to be delivered. This is the general rule of law. It must prevail in all cases, unless a contrary intent is expressed or clearly implied from the terms of the contract."

In the case of *McConihe* v. *The N. York & Erie R. R. Co.*, 20 N. York, 495, the plaintiff agreed, for a specified price, to build and deliver certain cars to the defendant, who was to furnish iron boxes necessary to their completion. They were completed, except so far as prevented by the default of the defendant in not furnishing the boxes, when they were destroyed by fire, in the possession of the plaintiff, and without his fault. Judge Grover, in giving the opinion of the court, says: "This was in effect an agreement for the sale of the cars, thereafter to be constructed by Mallory [the plaintiff's assignor], to the defendant, and did not vest any property in the defendant until the cars were completed and delivered." This was a case of extreme hardship, but still the court rigidly adhered to the rule of law on the subject.

See also the case of *Andrews* v. *Durant*, 1 Kernan, 35, where all the authorities on this point are cited and very ably reviewed.

Again, the tools manufactured were never taken possession of by the plaintiffs, neither does the contract contemplate that possession should be delivered to them until after certain machines should be manufactured by Corbett for them; hence a sale of these tools would be void so far as creditors were concerned, even if there had been a sale of them to the plaintiffs and title to them had passed between the parties. The assignee represents the creditors, and could make void such sale as effectually as creditors could have done had they attached the property. The assignment in this case was a statutory sequestration of the property for the benefit of all the creditors of Corbett. This doctrine has been repeatedly declared in this state, and it is too well established for controversy. *Shipman, Trustee,* v. *Ætna Ins. Co. et al.,* 29 Conn., 245; *Swift* v. *Thompson,* 9 Conn., 63; *Chamberlain* v. *Thompson,* 10 Conn., 243; *Root* v. *Welch,* 28 Conn., 157; *Hall* v. *Gaylor,* 37 Conn., 550. And many other cases to the same effect might be cited.

The plaintiffs insist that the fraud by which Corbett procured the last payment of $500 from the plaintiffs, by falsely representing that the set of tools was substantially manufactured, estops him from denying the truth of those representations, and also estops the defendant, who is his assignee, from making a like denial, on the ground that the latter could take no greater rights than Corbett himself had at the time of the assignment. Hence, it is claimed, it must be taken as true that at the time the last payment was made the set of tools was substantially completed.

But would such fact in the case alter its character? Even then the set of tools would not be constructed and ready for delivery; much less would they be actually delivered, or inspected and approved as finished articles, as the cases which we have cited require. Nor would such fact in the case an-

swer the law, which requires a change of possession in order to make a sale of chattels good as against creditors.

We advise judgment for the defendant.

In this opinion the other judges concurred.