MEMORANDUM OF DECISION
The Department of Children and Families ("DCF") has filed a petition seeking to terminate the parental rights of Marcella W. and Jerry W. with respect to Natea W., born on July 28, 1987. Natea is presently living in a foster home in Norwalk, Connecticut. She is a child with special needs. She has been diagnosed with attention deficit hyperactivity disorder and disruptive behavior disorder.
On August 2, 1994, Natea was placed in foster care pursuant to a voluntary placement agreement with her mother. A petition alleging that Natea was neglected and uncared for was filed with the court by DCF against the parents on November 8, 1994. On December 14, 1994, the court found that Natea was neglected and uncared for and committed her to DCF through September 23, 1995.
A petition for extension of commitment was filed by DCF on June 30, 1995. The petition was granted by the court on September 27, 1995 and Natea's commitment was extended through March 3, 1997.
A second petition for extension of commitment was filed by DCF on February 19, 1997. This petition was granted by the court on April 23, 1997. Natea's commitment was further extended CT Page 6369 through March 22, 1998. On March 19, 1998, the court entered, pursuant to an agreement of the parties, an order continuing Natea's commitment to DCF until further order of the court.
DCF filed the subject petition to terminate parental rights on June 27, 1997. Marcella W. was personally served with a copy of the petition by a deputy sheriff on July 5, 1997.
A trial on the petition for termination of parental rights was held on February 25, 1998 and March 18, 1998. Jerry W., Natea's father, was present throughout the trial. Although represented by an attorney during the proceedings, Marcella W., Natea's mother, did not attend either day of the trial.
The petition asserted four grounds for the termination of the parental rights of Marcella W. and three grounds for the termination of the parental rights of Jerry W. The three common grounds were: (1) that the child has been abandoned by the mother and father in the sense that the parents failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; (2) that the child has been found in a prior proceeding to have been neglected or uncared for and that the mother and father have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child; and (3) that there is no ongoing parent-child relationship with respect to the mother and the father which is defined as the relationship that ordinarily develops as a result of a parent having met on a continuing, day-to-day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or re-establishment of the parent-child relationship would be detrimental to the best interests of the child. The petition asserted a fourth ground for termination solely against the mother claiming that the child has been denied by reason of an act or acts of commission or omission by the mother the care, guidance or control necessary for her physical, educational, moral or emotional well-being. With respect to both parents, the petition alleged that the grounds have existed for not less than one year.
The operative dates for this decision are as follows: adjudication must be determined on the facts as of June 27, 1997, the date of the filing of the petition. Disposition must be determined on the facts as of March 18, 1998, the last day of CT Page 6370 trial.
After hearing testimony and reviewing the exhibits and court file, I find the following facts. On August 2, 1994, Marcella W. voluntarily placed four of her children, including Natea, under the care and supervision of DCF while she recuperated from surgery. All the children, except Natea, were returned to mother on August 31, 1994. Marcella W. asked that Natea remain in foster care because Natea's behavior was too difficult for her to manage at home.
On November 8, 1994, DCF filed a neglect and uncared for petition because Marcella W. refused to allow Natea to return home. On December 14, 1994, the court adjudicated Natea to be a neglected and uncared for child and committed her to DCF. Natea had been previously adjudicated as a neglected child on April 18, 1991 and committed to DCF through February 3, 1993 when the commitment was revoked.
No expectations were ordered by the court with respect to either parent at the time of Natea's commitment because neither parent was present in court. DCF did subsequently orally convey to Marcella W. the expectations of DCF for the return of Natea to her care. These expectations included visitation by mother with Natea, maintain contact with DCF and her attorney, substance abuse treatment, and individual and family counseling. No expectations were ever conveyed by DCF to father.
Marcella W. was also offered extensive services by DCF, including intensive family preservation, substance abuse treatment, parent aid services, a reunification program, counseling and domestic violence services. No evidence was provided the court that Jerry W. was offered or furnished any services by DCF.
Marcella W. did not fulfill the expectations conveyed to her by DCF. Marcella W. did not keep scheduled appointments for individual and family counseling. She also failed to successfully complete substance abuse treatment. On August 8, 1996, her clinician at a methadone treatment program informed DCF that she was not doing well in the program. Additional information could not be obtained because Marcella W. withdrew her authorization for the release of information. On May 12, 1997, DCF was informed by another program that Marcella W. had consistently tested positive for cocaine. CT Page 6371
Marcella W. also failed to regularly visit with Natea. For approximately six months, from August 31, 1994 until February 22, 1995, Marcella W. did not visit Natea. In February, visits began with Natea by Marcella W. according to a schedule of once per week for two to three hours per visit. Visits increased in May, 1995 to include overnight visits. Four overnight visits occurred. In June 1995, Natea was placed in a new foster home. Marcella W. has not visited with Natea at all from June 1995 through the present.
In fact, since June 1995 Marcella W. has had no contact at all with Natea. She has not sent any cards, gifts, letters or support directly to Natea or to DCF to give to Natea. She has even declined to talk to Natea on the telephone when given the opportunity to do so. Finally, during the summer of 1996, Marcella W. told Natea's foster mother that Natea had to get on with her life and that she was never coming home. She asked Natea's foster mother to never contact her again.
Natea no longer asks to see her mother. She now expresses a desire to stay with her foster mother and to never leave her foster home.
The failure of Marcella W. to maintain contact and visitation with Natea has had a significant adverse emotional impact on her daughter. She was hospitalized in June 1995 due to self destructive behavior and suicide ideation. A battery of psychological tests revealed overwhelming feelings of sadness and abandonment and concerns for her safety. According to her foster mother, Natea would cry at night and ask why her mother doesn't want her.
Visitation and contact with Natea by Jerry W. has also been quite limited. From August, 1994 through June, 1995, Jerry W. saw Natea three times. All visits ceased when he was incarcerated in June, 1995. After he was released from prison in March, 1996, he contacted DCF on two occasions to inquire about visitation. However, no visitation ever occurred. Jerry W. made no other attempts to contact Natea. Jerry W. was imprisoned again in May, 1997 and he was incarcerated at the time of trial.
Jerry W. professes his love for Natea and a desire for her to live with him upon his release from prison. Jerry W. also testified that while in prison he completed a drug treatment program, parenting classes and an anger management program. CT Page 6372
I. ADJUDICATION WITH RESPECT TO MARCELLA W
In a proceeding for termination of parental rights, DCF must prove a ground alleged in the petition, as of the date of the filing or the last amendment, by clear and convincing evidence.In re Theresa S., 196 Conn. 18 (1985). See also General Statutes Section 17a-112 (c), and Practice Book Section 34-3. Only one ground need be established for the petition to be granted. In reJuvenile Appeal (84-BC), 194 Conn. 252 (1985).
Abandonment, the first ground asserted by the petitioner, is defined by General Statutes § 45a-717(g)(2)(A) and § 11a-112(c)(3)(A) as a parent's failure "to maintain a reasonable degree of interest, concern or responsibility as to the welfare of [his or her] child. . . ." The statutory definition differs from the common law concept of abandonment wherein an intent to abandon totally and permanently must be proved. See, e.g.,Litvaitis v. Litvaitis, 162 Conn. 540, 547 (1972); Kantor v.Bloom, 90 Conn. 210, 213 (1916) and In re Shannon S.,41 Conn. Sup. 145, 151 (1989).
With respect to defining abandonment, the Supreme Court, inIn re Juvenile Appeal (Docket No. 9489), 183 Conn. 11, 15 (1981), stated that the commonly understood obligations of parenthood entailed the following minimum attributes: "(1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance."' See also In re Rayna M.,13 Conn. App. 23, 36-37 (1987). In the case of In re Michael M.,29 Conn. App. 112, 122 (1992), the Appellate Court sustained the trial court's finding of abandonment where the mother maintained only irregular and sporadic contact with her children, made no effort to contact them for a period of five months, did not appear for scheduled visitation or explain her absence, rarely called the children and did not send cards, letters or gifts. "Where a parent fails to visit a child, fails to display any love or affection for the child, has no personal interaction with the child, and no concern for the child's welfare, statutory abandonment has occurred." In re Migdalia M., 6 Conn. App. 194,209 (1986).
"The statutory standard is not whether the parents have shown CT Page 6373 some interest in their children. Common sense dictates that a parent's obligations toward his or her child go further than a minimal interest." In re Rayna M., supra, 13 Conn. App. 36-37.
The court finds by clear and convincing evidence existing on the date of the filing of the petition that Natea had been abandoned by Marcella W. in the sense that she failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. The mother agreed to a voluntary placement on August 2, 1994 and has had nothing whatever to do with the child since. Marcella W. has expressly stated that Natea will never come home again and that Natea needs to get on with her life. These statements together with her actions in not visiting or contacting Natea in over two years clearly indicate that Marcella W. has for all intents and purposes abandoned her daughter. The court further finds that this ground for termination has existed for more than one year.
II. DISPOSITION WITH RESPECT TO MARCELLA W.
Having found by clear and convincing evidence that the statutory grounds alleged by the petitioner for the termination of parental rights of Marcella W. with respect to Natea have been proven, the court must determine pursuant to Section 17a-112(c), as amended, if a termination of parental rights is in the best interest of the child. In so doing, the court must consider and make findings on each of the following seven enumerated criteria of General Statutes Section 17a-112(e). All facts, up to and including the date of trial, must be considered in the dispositional phase.
1. Services Offered: The court finds that DCF offered timely and appropriate services to Marcella W., including intensive family preservation, substance abuse treatment, parent aid services, a reunification program, counseling and domestic violence services.
2. Reasonable Efforts to Reunite: The court finds by clear and convincing evidence that DCF made reasonable efforts to reunite the child and mother. Soon after Marcella W. voluntarily placed Natea with DCF, the agency sought to return Natea to her mother. These efforts continued after DCF obtained a court order committing Natea to its care. DCF encouraged and sought to facilitate visitation by Marcella W. with Natea, all to no avail. Given the situation, DCF did the best that it could. Unfortunately, CT Page 6374 DCF found itself in the impossible position of endeavoring to reunify a child with a parent who wanted nothing to do with the child.
3. Court Orders: No court-ordered expectations were established in this case. However, the court finds that DCF did orally convey to Marcella W. expectations that needed to be fulfilled to effectuate reunification. Mother, however, failed to fulfill these expectations, in that she failed to successfully complete substance abuse treatment, failed to attend individual and family counseling and failed to visit with her child.
4. Significant Emotional Ties: Natea presently has strong emotional ties to her foster mother. Natea refers to her as "mom" and she has expressed a desire to always live with her foster mother. Natea's psychological ties to Marcella W. have weakened considerably. She no longer expresses a desire to visit with her mother.
5. Age of the Child: Natea is presently 10 years old. Given her tender age, the court finds that Natea needs certainty, consistency and stability in her life.
6. Parents' Efforts to Conform their Conduct to the Best Interests of the Child: The mother has made no efforts to conform her conduct to the best interests of the child. She has not followed through with substance abuse treatment or individual and family counseling. She has not visited or contacted Natea in almost three years. As found previously, Marcella has essentially abandoned her child.
7. Impediments to Parent/child Relationship: There is no evidence before the court that mother has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent or by any one else. While the mother's economic circumstances appear to be limited, there is no evidence in the record to support the conclusion that her limited means have interfered in any way with her relationship with her child.
III. ADJUDICATION WITH RESPECT TO JERRY W.
In order for the court to grant a petition to terminate parental rights, it must find by clear and convincing evidence that DCF "has made reasonable efforts to locate the parent and to reunify the child with the parent." General Statutes § CT Page 637517a-112(c)(1). These findings are not required should the court find that the parent is unable or unwilling to benefit from reunification efforts or the court has previously determined at a hearing that such efforts are not appropriate. Id.
Neither statutory exception is applicable here. DCF in its petition seeking termination of parental rights did not claim that Jerry W. was unable or unwilling to benefit from reunification efforts and it presented no evidence at trial to support such a claim. The only evidence presented that could arguably advance such a finding was the fact that Jerry W. is presently incarcerated. However, incarceration alone does not satisify the stringent standard imposed upon DCF by statute that it prove by clear and convincing evidence that the father is unable or unwilling to benefit from reunification services. Moreover, evidence was presented at trial that Jerry W. expected to be released from prison later this year and he testified with significant emotion that he wished to care for his daughter upon his discharge.
In addition, no findings had previously been made by the court that reunification efforts were inappropriate. Rather, the court, Jones, J., made a specific finding that reunification efforts continued to be appropriate when it granted an extension of Natea's neglect commitment on April 23, 1997.
DCF has not met its burden of proving by clear and convincing evidence that it has made reasonable efforts to locate Jerry W. and to reunify the child with him. What constitutes reasonable efforts is based on an objective standard and depends on the careful consideration of the circumstances of each individual case. In re Eden F., 48 Conn. App. 290, 312 (1998). Under the circumstances of this case, DCF should have done more first to locate Jerry W. and then to provide him with reunification services.
At the time that DCF filed the subject petition to terminate parental rights on June 27, 1997, Jerry W. was in prison. On that date and again on December 22, 1997, DCF filed affidavits with the court asserting that despite a diligent search by DCF the whereabouts of the father was unknown. DCF listed the local telephone directory, the city welfare department, correctional facility information, the department of social services and the father's sister as persons or entities contacted in its efforts. DCF knew that Jerry W. was in and out of prison. The DCF social worker testified at trial that DCF was unable to locate father in CT Page 6376 prison because it did not know his date of birth. However, the court file indicates that the inmate number of Jerry W. was readily available to DCF and could have been used to find Jerry W. in prison. On September 11, 1995 and on March 13, 1996, the court issued writs of habeas corpus ad testificandum for Jerry W. which contained his inmate number. Although these writs predated the father's current incarceration, his inmate number remained the same and it could have been used by DCF to locate him.
Moreover, even during the period of time preceding the father's current incarceration when DCF knew of his whereabouts it failed to offer or provide any reunification services to him. DCF admitted at trial that it made no efforts to reunify Natea with her father at any time and no services of any kind were offered or provided by DCF to Jerry W.
DCF seeks to justify its failure to take any steps toward reunification by asserting that Jerry W. never contacted DCF requesting such services and that it would have provided services if he had asked for them. The statute however places an affirmative obligation on DCF to make efforts to reunify the family. It can not sit back and wait to be asked. "It must be acknowledged that in matters of termination of parental rights, the department occupies a superior position. As one court realistically noted, `the partes are by no means dealing on an equal basis. The parent is by definition saddled with problems: economic, physical, sociological, psychiatric or any combination thereof. The agency, in contrast, is vested with expertise, experience, capital, manpower and prestige. Agency efforts correlative to their superiority are obligatory.'" In Re Eden F.,
supra, 48 Conn. 312.
Since the statute requires only "reasonable" efforts, the extent of the agency's efforts at reunification will vary depending on the circumstances of each case. The difficulties in locating Jerry W., his incarceration, and his status as the noncustodial parent are facts that substantially impact on the nature of the reunification efforts that DCF would be expected to make. These facts do not sanction the half-hearted efforts to locate Jerry W. and the failure to offer reunification services of any kind. Based on the record before it, this court is unable to find by clear and convincing evidence that DCF has made reasonable efforts to locate Jerry W. and to reunify Natea with him. CT Page 6377
"It bears emphasis that a judicial termination of parental rights may not be premised on a determination that it would be in the child's best interest to terminate the parent's rights in order to substitute another, more suitable set of adoptive parents. Our statutes and case law make it crystal clear that the determination of the child's best interests comes into play onlyafter statutory grounds for termination of parental rights have been established by clear and convincing evidence." (Internal quotation marks omitted.) In re Baby Girl B., 224 Conn. 263, 280
(1992).
IV. ORDERS
Based on the foregoing findings, and upon consideration of all of the evidence in this case, the court concludes that it has been demonstrated by clear and convincing evidence that Marcella W. has abandoned Natea W. and that it is in the best interest of Natea W. to terminate the parental rights of Marcella W. Accordingly, it is ordered that the parental rights of Marcella W. to the minor child Natea are hereby terminated. The petition to terminate the parental rights of Jerry W. is hereby denied.
The issue of whether the commitment of Natea to DCF should be extended under the circumstances, including the continued incarceration of Jerry W., remains to be determined. Therefore, the clerk of the court is directed to schedule a hearing on the petition for extension of commitment filed on December 23, 1997 by DCF. The court's order of March 19, 1998 continuing Natea's commitment to DCF until further order of the court shall remain in effect.
Jon M. Alander Superior Court Judge